UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| RICHARD JOHN CHARLES GALUSTIAN,  ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | |
| ) | |
| LAWRENCE T. PETER,    ) | Civil Action No. 2:08-cv-59 |
| ) | |
| and    ) | |
| ) | |
| COL. JOHN J. HOLLY,    ) | |
| ) | |
| Defendants.    ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
COL. JOHN J. HOLLY'S MOTION TO DISMISS PLAINTIFF'S
VERIFIED FIRST AMENDED COMPLAINT**

Matthew B. Kirsner
Virginia Bar No. 41615
Jennifer E. Lattimore
Virginia Bar No. 71188
Attorneys for Defendant Col. John J. Holly
Eckert Seamans Cherin & Mellott, LLC
707 East Main Street
Suite 1450
Richmond, VA 23219
Phone: (804) 788-7744
Fax: (804) 698-2950
mkirsner@eckertseamans.com
jlattimore@eckertseamans.com

*Counsel for Defendant Col. John J. Holly*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION……………………………………………………………….   **1**

BACKGROUND……………………………………………………………   **2**

ARGUMENT…………………………………………………………   **5**

   I.     THIS COURT LACKS PERSONAL JURISDICTION OVER
COL. HOLLY BECAUSE OF PLAINTIFF'S FAILURE TO
EFFECTUATE LAWFUL SERVICE…………………………………   **5**

        A.    Federal Service Rules………………………………….………..   **5**

             1.    Plaintiff's Service Was Beyond the Time Period Allowed
Under Federal Rule of Civil Procedure 4(e)(2)…………   **5**

             2.    Plaintiff's Service Failed to Adhere to the Requirements
of Federal Rule of Civil Procedure 4(e)(2)………………   **6**

        B.    California Service…………………………………………   **7**

        C.    Virginia Service…………………………………………   **8**

   II.    THE WESTFALL ACT PROHIBITS SUIT AGAINST COL. HOLLY
AND REQUIRES DISMISSAL OF COL. HOLLY IN FAVOR OF
THE UNITED STATES…………………………………………………..   **9**

        A.    The Westfall Act Provides Immunity From Suit for Federal
Employees……………………………………………………….   **9**

        B.    Plaintiff Clearly Alleges in the Complaint that Col. Holly Was
a Federal Employee Acting Within the Scope of His
Employment……………………………………………………   **10**

        C.    Operation of Westfall Act………………………………………..   **11**

        D.    If the Court Finds No Sufficient Grounds for Dismissal (as
Set Forth Above in Part I and Below in Parts III through
VI), It Nonetheless Must Stay the Case as to Col. Holly to Await
the Government's Certification…………………………………   **12**

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER
COL. HOLLY, WHO IS BEYOND REACH OF THE VIRGINIA
LONG-ARM STATUTE………………………………………..  13

  A.  There is No Basis for Personal Jurisdiction Over Col. Holly
Under the Virginia Long-Arm Statute…………………………  14

  B.  This Court Cannot Exercise Personal Jurisdiction Over
Col. Holly Consistent With the Due Process Clause of the
Fourteenth Amendment…………………………………………  16

    1.  Plaintiff Has Not Alleged a Single Fact Which
Suggests that Col. Holly Has Purposefully Availed
Himself of the Privilege of Conducting Activities in
Virginia……………………………………………..  17

    2.  Plaintiff's Reliance on the Conspiracy Theory of
Personal Jurisdiction Fails Because "Substantial Acts
in Furtherance of the Conspiracy" Were Not Performed
in Virginia, and Plaintiff Has Not Alleged that Col.
Holly Had Knowledge Nor Any Reason to Know that
"Substantial Acts" Would Take Place in Virginia…….  18

IV.  PLAINTIFF'S CLAIM FOR CONSPIRACY (COUNT II) IS
TIME-BARRED……………………………………………………  22

V.  COUNT II OF THE COMPLAINT FAILS TO STATE A CLAIM
FOR COMMON LAW CONSPIRACY BECAUSE THE ELEMENTS
OF CONSPIRACY AND DEFAMATION ARE NOT SUFFICIENTLY
PLED……………………………………………………………..  23

  A.  The Complaint Does Not Contain Facts Sufficient to Lead
to a Reasonable Inference that Col. Holly Came to an
Agreement to Harm the Plaintiff………………………….....  23

  B.  Plaintiff Has Failed to State a Claim for Conspiracy Because
the Underlying Wrong, Defamation, Has Not Been
Sufficiently Pled…………………………………………………  26

VI.  COUNT III FOR STATUTORY CONSPIRACY CONTAINS
NOTHING MORE THAN MERE CONCLUSORY ALLEGATIONS
AND FAILS TO STATE A CLAIM……………………………………  28

CONCLUSION…………………………………………………………..  30

## TABLE OF AUTHORITIES

__Cases__                                                                                    __Page(s)__

*Almy v Grisham*, 273 Va. 68, 639 S.E.2d 182 (2007)……………………………                26

*Alton v. Wang*, 941 F. Supp. 66 (W.D. Va. 1996)………………………………..                15

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002)...     17, 20

*Anderson v. FDIC*, 918 F.2d 1139 (4th Cir. 1990)…………………………………              3

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009)………………………...23, 24, 26, 28

*Bay Point Condo. Ass'n v. RML Corp.*, 52 Va. Cir. 432 (Norfolk 2000)………..       22

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d
283 (E.D. Va. 2003)……………………………………………………………..                               28, 29

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………..            23, 25, 28

*Blue Ridge Bank v. Veribanc, Inc.*, 755 F.3d 371 (4th Cir. 1985)………………         14

*Bochan v. La Fontaine*, 68 F. Supp. 2d 692 (E.D. Va. 1999)……………………          19

*Booth v. Leaf*, No. 94-1084, 1994 U.S. App. LEXIS 30738
(4th Cir. Nov. 3, 1994)……………………………………………………………...                       14, 19

*Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985)………      29

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)…………………………        16, 17, 21

*Calderon v. Aurora Loan Serv.*, No. 1:10cv129, 2010 U.S. Dist. LEXIS 55602
(E.D. Va., Alexandria Div. June 3, 2010)………………………………………..                     23

*Chapin v. Greve*, 787 F. Supp. 557 (E.D. Va. 1992)……………………………           28

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993)………………….        27

*Citizens for Fauquier County v. SPR Corp.*, 37 Va. Cir. 44
(Fauquier County 1995)…………………………………………………………                                26

*Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706
(W.D. Va. 2008)…………………………………………………………………..                                 22

*Connor v. Real Title Corp.*, 165 F.2d 291 (4th Cir. 1947)………………………        29

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009)…..     20

*DeSantis v. Hafner Creations*, 949 F. Supp. 419 (E.D. Va. 1996)……………….. 14, 15

*Dimet Proprietary, Ltd. v. Ind. Metal Protectives*, 109 F. Supp. 472
(D.Del. 1952)…………………………………………………………………… 5

*Echtenkamp v. Loudoun County Public Schs.*, 263 F. Supp. 2d 1043
(E.D. Va. 2003)………………………………………………………………… 26, 27

*Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474 (4th Cir. 1993)… 13

*English & Smith v. Metzger*, 901 F.2d 36 (4th Cir. 1990)………………………… 14

*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997)……………… 16, 20

*Farquhar v. United States*, No. 1:07cv1033, 2007 WL 4233492
(E.D. Va. Nov. 28, 2007)……………………………………………………… 9, 10

*Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700 (E.D. Va. 2009)…………….. 25

*Galustian v. Skylink Group of Companies, Inc.*, Court File No. 07-cv-343094
(Sup. Ct. of Justice, Ontario) (rel. Jan. 13, 2010)………………………………… 2, 23

*Gemini Enters. Inc. v. WFMY Television Corp.*, 470 F. Supp. 559
(M.D. N.C. 1979)……………………………………………………………… 18

*Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004)… 28

*Harding v. Williams Prop. Co.*, No. 96-2713, 1998 WL 637414
(4th Cir. Aug. 31, 1998)………………………………………………………… 8, 9

*Hechler Chevrolet, Inc. v. General Motors Corp.*, 337 S.E.2d 744, 230 Va. 396
(1985)………………………………………………………………………… 23

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984)……… 16

*Hinkle v. City of Clarksburg*, 81 F.3d 416 (4th Cir. 1996)……………………….. 23

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)…………………… 16

*Johnson v. Carter*, 983 F.2d 1316 (4th Cir. 1993)……………………………… 9, 10

*Krantz v. Int'l Airline Pilots Ass'n*, 427 S.E.2d 326, 245 Va. 202 (1993)………. 19

*Mansfield v. Anesthesia Assocs.*, No. 1:07cv941, 2008 U.S. Dist. LEXIS 34732
(E.D. Va. Apr. 28, 2008)………………………………………………………. 28

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936)…………… 14

*Merlo v. United Way of Am.*, 43 F.3d 96 (4th Cir. 1994)……………………….. 30

v

*Mitrano v. Hawes*, 377 F.3d 402 (4th Cir 2004)……………………………………… 17

*Moseley v. Fillmore Co., Ltd.*, ___ F. Supp. 2d ___, 2010 WL 2817178
(W.D. N.C. 2010)……………………………………………………………….. 5

*Noble Security, Inc. v. Tzong-Hsiung Huang*, 611 F. Supp. 2d 513
(E.D. Va. 2009)……………………………………………………………….. 18, 19, 20

*Onan v. Cnty. of Roanoke*, No. 94-1770, 1995 U.S. App. LEXIS 9085
(4th Cir. April 21, 1995)……………………………………………………… 22

*Osborn v. Hadley*, 549 U.S. 225 (2007)……………………………………… 9, 12

*In re: Outsidewall Tire Litigation*, No. 1:09cv1217, 2010 U.S. Dist. LEXIS
73729 (E.D. Va. July 21, 2010)……………………………………………….. 18

*Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999)…………………………. 2, 3

*Piccone v. Moatz*, 136 F. Supp. 2d 525 (E.D. Va., Alexandria Div. 2001)……… 6

*Ragan v. Merchants Transfer and Warehouse Co.*, 337 U.S. 530 (1949)……….. 22

*Rannoch, Inc. v. The Rannoch Corp.*, 52 F. Supp. 2d 681 (E.D. Va. 1999)……... 16

*Robinson v. Egnor*, 699 F. Supp. 1207 (E.D. Va. 1988)…………………………. 14

*Scharpenberg v. Carrington*, 686 F. Supp. 2d 655 (E.D. Va. 2010)…………….. 26

*Simmons v. Miller*, 261 Va. 561 (2001)……………………………………….. 29

*Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610 (E.D. Va. 2009)… 30

*Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132 (4th Cir. 1996)…………………. 14

*Union of Needletrades v. Jones*, 603 S.E.2d 920, 268 Va. 512 (2004)………….. 27

*United States v. Sea Bay Dev. Corp.*, No. 2:06cv624, 2007 U.S. Dist. LEXIS
33734, (E.D. Va., Norfolk Div. May 8, 2007)....................................................... 5

*United States v. Smith*, 499 U.S. 160 (1991)……………………………………... 9

*Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582 (E.D. Va. 1992)……….. 16

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 144 F. Supp. 2d 558
(W.D. Va. 2001)……………………………………………………………….. 28

*Willis v. Semmes, Bowen & Semmes*, 441 F. Supp. 1235 (E.D. Va. 1977)………. 14, 16

*Wilson v. United States Govt.*, 23 F.3d 559 (1st Cir. 1994)………………………. 22

vi

*Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002)…………………..    13, 20

**Statutes**

28 U.S.C. § 1346(b)……………………………………………………………    9

28 U.S.C. § 2671, *et seq.*………………………………………….…………...1, 9, 11, 12, 13

Cal. Civ. Proc. Code § 415.10……………………………………………………    8

Cal. Civ. Proc. Code § 415.20……………………………………………………    8

Virginia Code § 8.01-247.1………………………………………………………    22

Virginia Code § 8.01-296…………………………………………………………    9

Virginia Code § 8.01-328.1………………………………………………………    14, 15

Virginia Code § 18.2-499, *et seq.*………………………………………………..    28, 29

**Federal Regulations and Rules**

28 C.F.R. § 15.2(a)………………………………………………………………..    12

Fed.R.Civ.P. 4…………………………………………………………………….    5, 6, 7

Fed.R.Civ.P. 12…………………………………………………………………    5, 9, 22

Fed.R.Civ.P. 15…………………………………………………………………    22

Fed.R.Evid. 201(d)………………………………………………………………    2

**Other Authorities**

Coalition Provisional Authority Order Number 17………………………………..    25, 26

## INTRODUCTION

Plaintiff Richard John Charles Galustian filed his Verified First Amended Complaint ("Complaint") to add Col. John J. Holly, USMC, Ret., as a Co-Defendant. During his tenure as Director of Logistics for the U.S. Army Corps of Engineers in Iraq, Col. Holly is alleged in the Complaint to have received and forwarded a single document—a purported arrest warrant from an Iraqi court targeting Plaintiff.[1] Those two acts, in Iraq, have now subjected Col. Holly to litigation in Canada, which dismissed the case against all defendants because of a lack of personal jurisdiction, and in this Court, which has numerous grounds to dismiss the Complaint, including:

***First,*** Plaintiff failed to effectuate proper service of the Complaint on Col. Holly. As established herein, after time for service had expired, Plaintiff's process server left a copy of the Complaint between the door-handles of Col. Holly's home in Escondido, California, while Col. Holly was in Afghanistan. This is not lawful service. Mrs. Holly neither accepted the papers in person from any process server, nor did she receive a copy in the U.S. Mail. Further, the physical description recited in the affidavit of service does not match the person allegedly served, Col. Holly's wife Brenda Holly.

***Second,*** as an employee of the U.S. Government acting in that capacity at all times relevant to the Complaint, Col. Holly is protected against suit pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1998 (commonly referred to as the "Westfall Act"), 28 U.S.C. § 2679. Upon receipt of the requested certification of his status by the U.S.

---

[1] Col. Holly has previously filed with this Court an Affidavit reciting the circumstances surrounding his limited interaction with the warrant and expressly denying the material allegations of wrongdoing in the Complaint. *See* Defendant Lawrence T. Peter's Response in Opposition to Motion for Leave to File Amended Complaint, Ex. A (filed Apr. 7, 2008) (ECF No. 14-1) (hereinafter "Holly Aff.").

government, the Court shall be required to substitute the U.S. Government for Col. Holly in this case.

**Third,** this court has no personal jurisdiction over Mr. Holly, who is a California resident with no contacts to the Commonwealth of Virginia.

**Fourth,** Count II to the Complaint (common law conspiracy) is barred by the one-year statute of limitations.

**Fifth and Sixth,** Counts II and III (common law conspiracy and a violation of the Virginia Business Conspiracy Act), fail to state a claim against Col. Holly.

For all these reasons, the Court should dismiss Col. Holly from this action.

## BACKGROUND

From 1968 to 1998, Col. John J. Holly proudly served in the United States Marine Corps. Between January 2004 and September 2008, Col. Holly worked for the United States Army Corps of Engineers ("Corps") as the Director of Logistics responsible for reconstructing Iraq.

Notwithstanding these four decades of selfless devotion to this Country, since 2007, Col. Holly has been dragged through the mud with baseless allegations regarding a so-called global conspiracy to defame and discredit Plaintiff that has absolutely nothing to do with this retired Marine. Col. Holly has been forced to expend exorbitant sums of money and countless hours defending litigation in Canada (which dismissed a strikingly similar case filed by the same Plaintiff against Col. Holly and others[2]) and now this Complaint filed by Plaintiff in the Eastern District of Virginia.

_____

[2]     *See Galustian v. Skylink Group of Companies, Inc.*, Court File No. 07-cv-343094 (Sup. Ct. of Justice, Ontario), (rel. Jan. 13, 2010) (dismissing action against numerous defendants including Col. Holly). A true and correct copy of this decision is attached hereto as **Exhibit A**. The Court may take judicial notice of this publicly available document (available at http://www.canlii.org/en/on/onsc/doc/2010/2010onsc292/2010onsc292.html) pursuant to Fed.R.Evid. 201(d), and may consider it on a motion to dismiss. *Phillips v. LCI Int'l, Inc.*, 190

2

As alleged in the Complaint, the center of this dispute is a single document—purportedly an arrest warrant issued by an Iraqi court against Plaintiff during his tenure as a subcontractor in Iraq.  The warrant was delivered to Col. Holly at his Baghdad office and in his official capacity with the Corps.  Complaint ¶ 43.  The Complaint alleges that, in his official capacity, Col. Holly passed the warrant along to a trade association established to represent private security contractors.  *Id.* ¶ 45.  An employee of that trade association (Co-Defendant Lawrence Peter) allegedly distributed the warrant to his constituents as an e-mail attachment with a one-line note: "Please note the attached document received this office, 6 Feb 07."  Complaint, Ex. F.

From these seemingly-innocuous (and indisputably governmental) functions, Plaintiff has concocted a nefarious plot by Col. Holly and Co-Defendant Lawrence Peter to conspire to harm Plaintiff's business interests in Iraq, and to derail Plaintiff's lawsuit that he filed in Canada against a company called SkyLink, Col. Holly and others.  *See* Complaint, Counts II & III.

The allegations against Col. Holly hardly form the nexus of a conspiracy.  As Col. Holly attested in a sworn affidavit filed with this Court on April 17, 2008 (ECF No. 14-1), he received the warrant on his office desk in Baghdad, along with other documents, and determined them to be "a renewed effort by certain Iraqi authorities to assert control over ongoing Coalition activities in this region of Iraq."  *See* Holly Aff. ¶ 7.  Col. Holly had no reason to know whether the text and translation of the warrant were true or false, real or a forgery, but nonetheless viewed the documents as "a significant development … because it appeared to be an attempt by certain Iraqi authorities to assert jurisdiction over a foreign security contractor in contravention of Coalition Provisional Authority Order Number 17."  *Id.*  After reviewing the document with

_____

F.3d 609, 618 (4th Cir. 1999); *Anderson v. FDIC*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (noting judicial notice of records of bankruptcy court).  Plaintiff has made the Canadian legal proceedings a central part of this case by claiming the conspiracy involved an attempt to influence that foreign court action.  *See* Complaint ¶ 49.

legal counsel for the Corps, Col. Holly delivered a copy of the warrant to the Private Security Company Association of Iraq ("PSCAI"), which represented the interests of private contractors operating in Iraq.  *Id.* ¶ 8.  He did this to make PSCAI aware of this new attempt by Iraqi authorities to apply pressure on private security companies.  *Id.* ¶ 7.[3]

Simply put, Col. Holly acted in his official governmental function in Iraq to read a document placed on his desk, determined that it related to government contractors and their interface with the Iraqi government, and passed this document along to a single individual (Peter) for his review.  This simple administrative act has made Col. Holly the subject of litigation in two countries.

It is readily apparent that Col. Holly was added (belatedly) by Plaintiff as a Co-Defendant in order to manufacture jurisdiction in Virginia over Plaintiff's claims against Lawrence Peter. Indeed, this Court previously ruled that Plaintiff's Complaint could not proceed against Peter alone in this Court.[4]  As explained below, Plaintiff has also finessed the legal prerequisites for asserting a cognizable claim against Col. Holly, beginning with failure to effectuate proper service, and ending with a failure to plead the necessary elements of each and every cause of action in the Complaint against Col. Holly.  Accordingly, this Court should dismiss Col. Holly from this case for any and all of the reasons established in Sections I through VI, below.

---

[3]   The Complaint also alleges that Col. Holly had a secret equity interest in a company called SkyLink, which was the lead defendant in the Canadian action brought by Plaintiff.  Col. Holly has refuted that allegation as well: "I do not now have, and have never had, any business or ownership interest in SkyLink Arabia or in any private security Company."  *Id.* ¶ 10.

[4]   Col. Holly adopts and incorporates by reference Defendant Lawrence T. Peter's April 16, 2010 "Motion to Dismiss Plaintiff's Verified First Amended Complaint and Motion to Drop Party" and the "Memorandum of Law in Support" thereof, ECF Nos. 61 and 62.  The Court has yet to rule upon this motion.

## ARGUMENT

**I.      THIS COURT LACKS PERSONAL JURISDICTION OVER COL. HOLLY BECAUSE OF PLAINTIFF'S FAILURE TO EFFECTUATE LAWFUL SERVICE.**

This Court does not have personal jurisdiction over Col. Holly because he was not properly served with this Complaint.  *See United States v. Sea Bay Dev. Corp.*, No. 2:06cv624, 2007 U.S. Dist. LEXIS 33734 (E.D. Va., Norfolk Div. May 8, 2007) ("Federal Rule of Civil Procedure 12(b)(5) provides for the dismissal of an action for insufficient service of process."). This Court should therefore dismiss the Complaint against Col. Holly for invalid service of process.

Despite the numerous avenues of service of process available to Plaintiff under Federal or applicable state laws, Plaintiff nonetheless failed to satisfy any of the applicable standards of service.  Worse, Plaintiff's agent appears to have misrepresented or misstated the facts surrounding his alleged substituted service on Defendant's wife (Mrs. Brenda Holly) in several material ways, as set forth in the Affidavit of Brenda Holly, a true and correct copy of which is attached hereto as **Exhibit B**.[5]

**A.      Federal Service Rules.**

**1.      Plaintiff's Service Was Beyond the Time Period Allowed Under Federal Rule of Civil Procedure 4(e)(2).**

The Complaint was filed on March 26, 2010.  Pursuant to Federal Rule of Civil Procedure, if Plaintiff failed to serve Col. Holly within 120 days of that date, then the Court must "dismiss the action against that defendant or order that service be made within a specified period of time."  The 120-day period expired on or about July 25, 2010.  On July 28, 2010, this Court

---

[5]      Where, as here, the sufficiency of process and service of process remove the court's jurisdiction over defendant, the Court may consider materials outside the pleadings, such as affidavits.  *See Moseley v. Fillmore Co., Ltd.*, ___ F. Supp. 2d ___, 2010 WL 2817178 (W.D. N.C. 2010) (citing *Dimet Proprietary, Ltd. v. Indus. Metal Protectives*, 109 F. Supp. 472 (D.Del.1952)).

issued an Order requiring Plaintiff to show cause within twenty (20) days of the Order as to why the Complaint should not be dismissed pursuant to Rule 4(m) for failure to make timely service. On August 17, 2010, Plaintiff filed his Response, claiming that valid service was made on Col. Holly at 6:45 p.m. on August 9, 2010 via substituted service on Mrs. Holly at the family home in Escondido, California.  Attached to the Response were copies of "Summons in a Civil Action," "Proof of Service," "Proof of Service of Summons," and "Declaration of Diligence."  *See* Response to Order to Show Cause, Ex. 2, p. 3 ¶ 5 (ECF No. 79-2).

Because of the service irregularities discussed below, Col. Holly requests that the Court reconsider its August 24, 2010 Order extending Plaintiff's time for service through August 9, 2010, and instead order the case be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5).  *See Piccone v. Moatz*, 136 F. Supp. 2d 525, 529 (E.D. Va., Alexandria Div. 2001) ("Piccone failed to serve any of the individual Defendants within the mandatory 120-day time period.  Therefore, the aforementioned Defendants…are dismissed from this suit for lack of personal jurisdiction.").

**2.      Plaintiff's Service Failed to Adhere to the Requirements of Federal Rule of Civil Procedure 4(e)(2).**

Federal Rule of Civil Procedure 4(e) authorizes delivery of a summons and complaint in accordance with the laws of "the state where the district court is located or where service is made," Rule 4(e)(1), or as provided in Rule 4(e)(2).  Plaintiff's attempted service was made pursuant to California law, as set forth below.  Nonetheless, analysis of the broad federal provisions found in Rule 4(e)(2) is instructive and illustrative of the extent to which Plaintiff's process server botched any form of effective service.

In his "Proof of Service," Plaintiff's process server declared, under penalty of perjury, that he personally served (*i.e.*, "left the summons…*with*"): "Jane" Holly (Wife, Cauc[asian],

Fem[ale], 48 yrs. [of age], Auburn Hair, 5'7).  This physical description of Mrs. Holly is not correct and calls into question whether the process server in fact left service *with* anyone.  Mrs. Holly's affidavit attests that:

1.      She was not personally served, but instead found a copy of the Summons and Complaint "stuck between the handles of the front door" on the morning of August 10, 2010. *See* Ex. B ¶ 18.

2.      Her first name is Brenda, not Jane.  *Id.* ¶ 20(a).

3.      She is 61 years old, not 48.  *Id.* ¶ 20(b).

4.      She has brown hair, not auburn (dark red) hair.  *Id.* ¶ 20(c).

5.      No 48 year old, auburn-haired female lives at the Holly's home.  *Id.* ¶ 20(d).

The Proof of Service also claims a copy of the Summons and Complaint were mailed to Col. Holly's address.  Mrs. Holly attests they were not.  *See id.* ¶ 16.

Plaintiff's private process server failed in all of the required elements of Rule 4(e)(2) when attempting service on Col. Holly.  Most obviously, Col. Holly was in Afghanistan (not California) and was not himself served with the Summons and Complaint per Rule 4(e)(2)(A). Ex. B ¶¶ 7, 18.  A copy of service was not left *with* Mrs. Holly at Col. Holly's home per Rule 4(e)(2)(B) or subsequently mailed to their home.  Ex. B ¶¶ 16, 18.  Thus, under Rule 4(e)(2), Plaintiff did not effectuate proper service of Col. Holly.[6]

### B.      California Service.

Plaintiff attempted to follow the service rules of California in serving the alleged process on Mrs. Holly.  Col. and Mrs. Holly reside in California, and Plaintiff attempted service at the

---

[6]      It is worth noting that Plaintiff abandoned all efforts to have Col. Holly served as of May 17, 2010, and those efforts did not re-commence again until <u>after</u> this Court issued the show cause order on July 28, 2010.  *See* Declaration of Diligence, ECF No. 79-1.

Holly family home in Escondido, California.[7]  Thus, the Court should consider whether service

was appropriate exclusively under California law.

Although California law allows for several paths to lawful personal service, Plaintiff did

not satisfy any of them.  First, Section 415.10 of the California Code of Civil Procedure allows a

copy of the summons and complaint to be served directly to Col. Holly.  Cal. Civ. Proc. Code §

415.10.  As indicated by the Proof of Service Summons, this did not occur.

Second, pursuant to Section 415.20 of the California Code of Civil Procedure, Cal. Civ. Proc.

Code § 415.20, service may be effectuated by leaving a copy "*with* the person who is apparently

in charge" at the usual mailing address of Col. Holly, "*and* by mailing a copy of the summons

and complaint by first class mail."  (emphasis supplied).  As attested in Mrs. Holly's affidavit,

the copy of the summons and Complaint were left in the handles of the front door to her home,

Ex. B ¶ 18, and was not left with her as required by the rule.  Further, Mrs. Holly attests that no

copies of the summons or Complaint were received by mail as required by the rule.  *Id.* ¶ 16.

Thus, Plaintiff failed to satisfy California's service rules.

**C.     Virginia Service.**

As set forth below, this Court lacks personal jurisdiction over Col. Holly pursuant to

Virginia's Long-Arm Statute.  *See* Section III, A., *infra*.  Therefore, service may not be lawfully

made pursuant to Virginia law.  *See Harding v. Williams Prop. Co.*, No. 96-2713, 1998 WL

637414, *11 (4th Cir. Aug. 31, 1998) ("service by a method provided by the law of a forum state

---

[7]     Plaintiff's process server attested that he completed service in accordance with California
law.  Specifically, in his "Proof of Service Summons," the process server marked boxes that
claimed service was delivered to "'Jane' Holly (Wife, Caucasian, Female, 48 Years Old, Auburn
Hair, 5'7) – Person Authorized to Accept," and mailed pursuant to California Code of Civil
Procedure § 415.20.  The process server attested he was "a registered California process server,"
and used the approved California Proof of Service Summons form, as denoted at its lower-left
corner "Form Adopted for Mandatory Use, Judicial Council of California, POS-010 (Rev.
January 1, 2007)."

is effective only if the courts of the forum state could acquire personal jurisdiction using that

same method").

Plaintiff failed to effectuate service under either applicable federal or state law.[8]

Accordingly, the Court should dismiss the action against Col. Holly pursuant to Rule 12(b)(5).

## II.   THE WESTFALL ACT PROHIBITS SUIT AGAINST COL. HOLLY AND REQUIRES DISMISSAL OF COL. HOLLY IN FAVOR OF THE UNITED STATES.

### A.   The Westfall Act Provides Immunity From Suit for Federal Employees.

The Federal Employees Liability Reform and Tort Compensation Act of 1998

(commonly referred to as the "Westfall Act"), 28 U.S.C. § 2679, "accords federal employees

absolute immunity from common-law tort claims arising out of acts they undertake in the course

of their official duties." *Osborn v. Hadley*, 549 U.S. 225, 229 (2007).  Pursuant to the Westfall

Act, the only remedy available to a plaintiff for allegedly negligent or wrongful acts of a federal

employee acting within the scope of his employment is a suit against the United States under the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80.[9]

The purpose of the Westfall Act is plain, and was well-described by the Fourth Circuit in

*Johnson v. Carter*, 983 F.2d 1316 (4th Cir. 1993), a case finding allegedly defamatory remarks

made by a Navy Admiral to be entitled to protection from suit under the law: "It has to do with

the ability and obligation of one of the principal officers of the United States to perform his duty

unhampered by having to answer for the same in a civil court." *Id.* at 1324.  *See also Farquhar*

---

[8]   To the extent this Court looks to Virginia rules of service, Plaintiff's service was wholly invalid under Virginia Code § 8.01-296.

[9]   The Westfall Act contemplates only two exceptions: (1) claims brought "for a violation of the Constitution of the United States"; and (2) claims brought "for a violation of a statute of the United States...." 28 U.S.C. § 2679(b)(2).  *See United States v. Smith*, 499 U.S. 160, 166-67 (1991) (declining to infer additional exceptions beyond the two expressly stated in the Westfall Act).  The Complaint does not allege that Col. Holly violated either the U.S. Constitution or any federal statute.

*v. United States*, No. 1:07cv1033, 2007 WL 4233492, *6 (E.D. Va. Nov. 28, 2007) (absence of "immunity under the Westfall Act would create a chilling effect on [his] ability to make necessary decisions to protect our nation's vital security interests.").

**B.    Plaintiff Clearly Alleges in the Complaint that Col. Holly Was a Federal Employee Acting Within the Scope of His Employment.**

Plaintiff alleges that, at all times relevant thereto, Col. Holly was a federal employee: "[Col.] Holly was the Director of Logistics for the Project and Contracting Office for the U.S. Army Corps of Engineers' Gulf Region Division, with an office in Baghdad, Iraq."  Complaint ¶ 4.  *See also id.* ¶ 44 (asserting Holly was during 2007 "an employee of the U.S. Army Corps of Engineers, effectively a U.S. Governmental official").  Plaintiff further alleges that "because of his official governmental role in Iraq," Col. Holly received in his office a copy of a purported warrant issued by an Iraqi court for the arrest of the Plaintiff.  *See* Complaint ¶ 43.

Plaintiff then alleges that, while in his office, Col. Holly "knew or recklessly or negligently disregarded the fact that the warrant was a fraud and a forgery,[10] [and] nevertheless purposefully delivered it on February 6, 2007 to Peter, the executive director of the PSCAI who then operated the trade association from his desk, which was located literally feet away from Holly's own desk, in Holly's office in the Green (now International) Zone in Baghdad." Complaint ¶ 45 (emphasis added).

Absolutely nothing in the Complaint supports the inference that Col. Holly received or disseminated the warrant in any capacity other than his role as an employee of the U.S. Government.

---

[10]    This allegation is contradicted by other provisions in the Complaint.  For example, Exhibit E to the Complaint establishes March 22, 2007 as the date the British Foreign Commonwealth Office determined the warrant to be a forgery.  Plaintiff fails to explain how Col. Holly could have determined a document to be forged before giving it to Co-Defendant Peter when the investigating authorities themselves did not do so until several weeks later.

### C.      Operation of Westfall Act.

The Westfall Act requires the U.S. Attorney General or his assignee to "defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury."  28 U.S.C. § 2679(c).  A federal employee is tasked with submitting evidence of process (or alleged process) to "his immediate superior or to whomever was designated by the head of his department to receive such papers."  *Id.*  The superior is then obligated to provide those copies to the Attorney General and the United States Attorney for the district in which the action is pending.  *Id.*

Col. Holly resigned from the Corps in 2008 to accept employment relating to the reconstruction of Afghanistan.  Thus, he has no immediate superior at the Corps to whom he may provide the documentation.  Col. Holly submitted the documents directly to the Norfolk Division of the Corps, with a copy to the United States Attorney for the Eastern District of Virginia, in a letter from his undersigned counsel.  A true and correct copy of that letter is attached hereto as **Exhibit C**.[11]

Col. Holly has requested that the government issue a "Certification of Scope of Employment" that he "was acting within the scope of his office or employment at the time of the incident out of which the claim arose."  28 U.S.C. § 2679(d)(1).  Upon issuance of the certification, the case against Col. Holly "shall be deemed an action against the United States…and the United States shall be substituted as the party defendant."  *Id.*

---

[11]      The letter from undersigned Counsel to the Corps specified that Col. Holly disagreed that he was served with effective process of the Complaint, but was submitting it pursuant to the Westfall Act out of an abundance of caution.  *See Id*.  Col. Holly's disclosure of this letter to the Corps in this filing shall not constitute a waiver of any privilege which may exist as between Col. Holly, the Corps and the U.S. Attorney's Office in regards to Plaintiff's Complaint.

**D.    If the Court Finds No Sufficient Grounds for Dismissal (as Set Forth Above in Part I and Below in Parts III through VI), It Nonetheless Must Stay the Case as to Col. Holly to Await the Government's Certification.**

The Westfall Act is not merely intended to protect federal employees like Col. Holly against civil damages.  It also is intended to protect federal employees at the outset of litigation from the cost and burdens of the suit itself.  As the U.S. Supreme Court stated in *Osborn*,  the "core purpose" of the Westfall Act "is to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government's shoulders."  *Osborn*, 549 U.S. at 252.  Col. Holly has already defended (and defeated) these claims in Canada; he should not be forced to pay a second time in order to defend in this U.S. forum.

In this case, the Complaint plainly alleges that the Iraqi warrant was delivered to Col. Holly in his capacity as a federal employee, and that in that capacity he also passed the document along to a subcontractor association representative (Co-Defendant Peter).  Complaint ¶¶ 43-45.  Col. Holly (through undersigned counsel) has followed the requirement of the Westfall Act to alert his former employer.[12]  Thus, it would be inequitable for this Court to require Col. Holly to move forward with his defense in this matter until the government has had an opportunity to provide the requested certification.

Moreover, if the government does not provide that certification, Col. Holly is entitled to (and will promptly) request this Court to make that determination under the Westfall Act: "In the event that the Attorney General has refused to certify scope of office or employment under this

---

[12]    The Westfall Act requires the federal employee to provide copies of service or alleged service upon timing set by the Attorney General.  *See* 28 U.S.C. § 2679(c) ("deliver within such time … as determined by the Attorney General").  Thus, Col. Holly is required to provide copies "promptly."  *See* 28 C.F.R. § 15.2(a) ("shall promptly deliver all process and pleadings served on the employee").  Although Col. Holly denies that service was effectuated properly, out of an abundance of caution he submitted the documents immediately upon retaining the undersigned counsel in this action, and in advance of the date an answer or other defense to the Complaint was due (if served properly).

12

section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment."  28 U.S.C. § 2679(d)(3).

Should the Court decline to dismiss the claims against Col. Holly on any one of the various other grounds set forth herein, Col. Holly requests the Court stay the case against him until the government has an opportunity to issue its certification, or he has an opportunity to request the Court to make that determination.  When certification is received, the Court should dismiss the action against Col. Holly and substitute the United States as a party Defendant in his stead.  As of the date of this filing (August 30, 2010), the Corps and the U.S. Attorney's Office have received Col. Holly's written request but have not completed their investigation necessary to grant or deny the certification request.

### III.  THIS COURT LACKS PERSONAL JURISDICTION OVER COL. HOLLY, WHO IS BEYOND REACH OF THE VIRGINIA LONG-ARM STATUTE.

The Court should dismiss Col. Holly from the Complaint because no statutory or constitutional basis exists for the Court to exercise personal jurisdiction over Col. Holly.  A federal court sitting in diversity has personal jurisdiction over a nonresident defendant when two conditions are satisfied: (1) an applicable long-arm statute confers jurisdiction; and (2) the assertion of jurisdiction is consistent with constitutional due process.  *Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).

The majority of Virginia federal and state courts analyzing this issue merge the statutory and constitutional inquiries because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause.  *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (internal citations omitted).  Substantial authority also exists, however, for the proposition that even where constitutional due process requirements have been met, a nonresident defendant may not be subjected to personal jurisdiction in Virginia

13

without satisfying the narrower specific requirements of Virginia's long-arm statute.[13]   Under

either a statutory or constitutional analysis, Plaintiff has not met his burden of alleging and

proving facts sufficient to justify this Court's exercise of personal jurisdiction over Col. Holly

and he should be dismissed from this action.  *See McNutt v. General Motors Acceptance Corp.*,

298 U.S. 178, 189 (1936).

### A.    There is No Basis for Personal Jurisdiction Over Col. Holly Under the Virginia Long-Arm Statute.

This Court cannot assert personal jurisdiction over Col. Holly under the Virginia long-

arm statute.  Virginia's long-arm statute states that personal jurisdiction may be exercised over a

nonresident when a cause of action arises from that person's "causing tortious injury by an <u>act or

omission in this Commonwealth</u>" or "causing tortious injury in this Commonwealth by an act or

omission outside this Commonwealth <u>if he regularly does or solicits business, or engages in any

other persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered, in this Commonwealth</u>."  Va. Code § 8.01-328.1(A)(3) & (4) (emphasis

added).  The facts alleged in the Complaint fail to meet either basis for jurisdiction under the

statute.

---

[13]      *See, e.g., English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990); *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996); *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.3d 371, 373-74 (4th Cir. 1985); *Willis v. Semmes, Bowen & Semmes*, 441 F. Supp. 1235, 1243 (E.D. Va. 1977) ("Insistence that these particulars [as defined by the Virginia legislature in the long-arm statute] be satisfied even in those situations where it could plausibly argue that a lesser standard would meet due process requirements is a course mandated by legislative judgment."); *Robinson v. Egnor*, 699 F. Supp. 1207, 1211 (E.D. Va. 1988); *DeSantis v. Hafner Creations*, 949 F. Supp. 419, 423 (E.D. Va. 1996) ("[I]t is possible that a non-resident defendant's contacts with Virginia could fulfill the dictates of due process, yet escape the literal grasp of Virginia's long-arm statute… [the long-arm statute] provides a ceiling of procedural protections above the federal floor of constitutional due process"); *Booth v. Leaf*, No. 94-1084, 1994 U.S. App. LEXIS 30738, *5-6 (4th Cir. Nov. 3, 1994) (The specific requirements in the Virginia long-arm statute must be met even in those situations where it could plausibly argue that a lesser standard would meet due process).

14

Plaintiff makes no allegation in the Complaint that Col. Holly committed an act or omission in the Commonwealth of Virginia; indeed, the only act or omission alleged to have been committed by Col. Holly is his delivery of the Galustian warrant to Co-Defendant Peter. This single act took place within the confines of an office building located in Baghdad, Iraq. *See* Complaint ¶¶ 44–45.  To be clear, Col. Holly committed no tortious act or omission in or outside Virginia relating to Plaintiff.  Virginia Code § 8.01-328.1(A)(3) confers personal jurisdiction only where the out-of-state defendant is physically present in Virginia when committing the act or omission giving rise to the tort at issue. *Id.  See also DeSantis v. Hafner Creations*, 949 F. Supp. 419, 425-426 (E.D. Va. 1996), *Alton v. Wang*, 941 F. Supp. 66, 67 (W.D. Va. 1996). Therefore, because there is no act or omission that occurred in Virginia, long-arm jurisdiction over Col. Holly cannot be had pursuant to Virginia Code § 8.01-328.1(A)(3).

Nor is there any allegation in the Complaint that Col. Holly regularly does or solicits business in Virginia, engages in a persistent course of conduct in Virginia, or derives revenue from goods or services in Virginia.  The Complaint clearly alleges that Col. Holly is a citizen and permanent resident of California, and that during all times relevant to the Complaint, Col. Holly was working for the U.S. Army Corp of Engineers in Baghdad, Iraq.  Complaint ¶ 4.  Therefore, there is also no basis for exercising personal jurisdiction over Col. Holly pursuant to Virginia Code § 8.01-328.1(A)(4).  Accordingly, this Court lacks a statutory basis for exercising personal jurisdiction over Col. Holly, and the Complaint is properly dismissed on this basis alone. *See DeSantis*, 949 F. Supp. at 423 (the long-arm statute "provides a ceiling of procedural protections above the federal floor of constitutional due process").

**B.      This Court Cannot Exercise Personal Jurisdiction Over Col. Holly
Consistent With the Due Process Clause of the Fourteenth Amendment.**

This Court also does not have constitutional jurisdiction over Col. Holly.  The assertion

of personal jurisdiction over a non-resident defendant must comport with the due process clause

of the Fourteenth Amendment.  *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582 (E.D.

Va. 1992); *Rannoch, Inc. v. The Rannoch Corp.*, 52 F. Supp. 2d 681, 685 (E.D. Va. 1999) (citing

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A federal court may exercise

only two types of jurisdiction over a nonresident defendant: general jurisdiction and specific

jurisdiction.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).

General jurisdiction may be exercised if the defendant's contacts with the forum state are

continuous and systematic.  *Id.* at 414.  Specific jurisdiction, on the other hand, requires that the

defendant "purposefully directed his activities at residents of the forum, and the litigation results

from alleged injuries that arose out of or relate to those activities."  *Burger King Corp. v.

Rudzewicz*, 471 U.S. 462, 472 (1985).  Because the Complaint alleges that Col. Holly is subject

to personal jurisdiction in this Court on the basis of an alleged conspiracy and a tortious act

committed in furtherance of the conspiracy in Virginia, this Court should focus on whether it has

specific jurisdiction over Col. Holly arising out of the alleged tortious activities.[14]

---

[14]      Even if Plaintiff had not hinged his personal jurisdiction allegation on specific
jurisdiction, there are no facts alleged in the Complaint which could provide a basis for general
jurisdiction over Col. Holly.  The "continuous and systematic" contacts necessary for a finding
of general jurisdiction have been interpreted to mean that at a minimum, the plaintiff must prove
that the defendant "maintained some sort of ongoing interactions with the forum state" and that
such interactions are "so substantial that they amount to a surrogate for presence" in the State.
*Willis v. Semmes, Bowen & Seemes*, 441 F. Supp. 1235, 1243 (E.D. Va. 1977); *ESAB Group, Inc.
v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).  No basis exists for such a finding here
because Plaintiff pleads that Col. Holly is a permanent resident and citizen of California who was
working in Baghdad, Iraq during all relevant times asserted in the Complaint and is currently
working in Afghanistan.  *See* Complaint ¶ 4.

16

    **1.**    **Plaintiff Has Not Alleged a Single Fact which Suggests that Col. Holly Has Purposefully Availed Himself of the Privilege of Conducting Activities in Virginia.**

When deciding whether a defendant's activities justify the exercise of specific jurisdiction, the Fourth Circuit has held that the court must analyze: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal  jurisdiction would be constitutionally reasonable." *Mitrano v. Hawes*, 377 F.3d 402, 406-07 (4th Cir. 2004) (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).  This test is designed to ensure that the defendant is not haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated contacts."  *See Burger King Corp.*, 471 U.S. at 475.

Plaintiff has not alleged a single fact in the Complaint tending to show that Col. Holly conducted any activity at all within the Commonwealth of Virginia, let alone activities sufficient to show "purposeful availment."  On the contrary, Plaintiff alleges in the Complaint that at "the material time," Col. Holly was the Director of Logistics for the Project and Contracting Office of the U.S. Army Corps of Engineers' Gulf Region Division, with an office in Baghdad, Iraq.  Complaint ¶ 4.  While in Iraq, Col. Holly allegedly agreed to participate in a conspiracy to "discredit and defame" Plaintiff in his *Canadian* lawsuit and harm Plaintiff's supposed business stake in SkyLink Arabia, which was "to focus on *non-American*-related logistic and transportation issues *in the Middle East, primarily in Iraq*." *Id.* ¶¶ 9, 16, 43, 44 (emphasis added).  Col. Holly delivered the warrant to Peter (who was also working in the same building *in Iraq*). *Id.* ¶ 45.  Col. Holly then (allegedly) refused to issue a corrective report (presumably in the course and scope of his federal government employment *in Iraq*) stating that the warrant was a forgery. *Id.* ¶ 52.  None of the foregoing activities is alleged to have occurred in Virginia.

Because no activities are alleged to have been performed by Col. Holly in Virginia, no basis

exists for a finding that Plaintiff's claims arise out of those activities, and therefore no

constitutional basis exists for the exercise of specific jurisdiction over Col. Holly by this Virginia

federal district court.

> **2.     Plaintiff's Reliance on the Conspiracy Theory of Personal Jurisdiction Fails Because "Substantial Acts in Furtherance of the Conspiracy" Were Not Performed in Virginia, and Plaintiff Has Not Alleged that Col. Holly Had Knowledge Nor Any Reason to Know that "Substantial Acts" Would Take Place in Virginia.**

Federal courts in this Circuit have held that where the Court does not have personal

jurisdiction over a nonresident defendant arising out of his own actions, personal jurisdiction

may nevertheless be established based on the acts of a co-conspirator under the "conspiracy

theory of personal jurisdiction" where "substantial acts in furtherance of the conspiracy were

performed in the forum state and the co-conspirator knew or should have known that acts would

be performed in the forum state."  *Noble Security, Inc. v. Tzong-Hsiung Huang*, 611 F. Supp. 2d

513, 539-40 (E.D. Va. 2009); *Gemini Enters., Inc. v. WFMY Television Corp.*, 470 F. Supp. 559,

560 (M.D. N.C. 1979) (the mere presence of a conspirator within the forum state is not sufficient

to permit personal jurisdiction over co-conspirators unless substantial acts in furtherance of the

conspiracy were performed in the forum state and the co-conspirator knew or should have known

that acts would be performed in the forum state); *In re: Outsidewall Tire Litigation*, No.

1:09cv1217, 2010 U.S. Dist. LEXIS 73729, at *15-16 (E.D. Va., Alexandria Div. July 21, 2010)

("[J]oining a conspiracy with the knowledge that acts in furtherance of the conspiracy would

occur in Virginia constitutes purposeful availment of the privileges of the Commonwealth and

thus satisfies the Virginia long-arm statute and constitutional due process requirements.").

Plaintiff's allegations in the Complaint do not provide a basis for this Court to exercise

personal jurisdiction under the "conspiracy theory of personal jurisdiction" because there were

no "substantial acts in furtherance of the conspiracy" performed *in Virginia*, and Col. Holly is

not alleged to have known, nor should he have known according to the allegations made, that

acts in furtherance of the conspiracy would be performed in Virginia.  *See Noble Security, Inc.*,

611 F. Supp. 2d at 539–40.

According to the Complaint, the goal of the alleged conspiracy was to harm Plaintiff's

reputation and business interests in Iraq.  Complaint ¶¶ 9, 37, 43, 44, 47 & 54.  The only "act"

alleged to have been committed in furtherance of the conspiracy is the e-mail message Peter (not

Holly) sent containing the warrant addressed to "director@pscai.org."  Complaint ¶ 48.  Plaintiff

alleges that the e-mail was sent – by Peter (not Holly) – to "several hundred constituents of the

PSCAI" as well as "to the U.S. and other military and diplomatic organizations," including,

"upon information and belief," certain "operating facilities within the Commonwealth of

Virginia, and other government-related individuals, which are located in the Commonwealth of

Virginia."  *Id.* ¶¶ 48, 68.  Plaintiff does not allege in his Complaint that the e-mail was sent from

a computer physically located in Virginia.[15]

As a preliminary matter, although this case involves communications made over the

Internet, federal courts have uniformly held in non-Internet contexts that defamatory statements

generated outside a forum state and transmitted by telephone or mail to the forum state do not

constitute "acts" within the state as required by the Virginia long-arm statute and other similar

long-arm statutes.  *Bochan v. La Fontaine*, 68 F. Supp. 2d 692, 700 n. 26 (E.D. Va. 1999) (citing

*Krantz v. Int'l Airline Pilots Ass'n,* 427 S.E.2d 326, 328, 245 Va. 202, 206 (1993) (internal

citations omitted).  *See also Booth*, 1994 U.S. App. LEXIS 30738 at * 4 ("§ 8.01-328.1(A)(3)

does not grant jurisdiction over a person who wrote and mailed an allegedly defamatory letter

---

[15]     On the contrary, the Complaint  alleges that Peter and Holly were working out of the
same office in Iraq during the relevant time period.  *See* Complaint ¶¶ 4, 45.

outside Virginia."). Putting aside (for the moment) that it was Peter (not Holly) who sent the allegedly defamatory e-mail regarding Plaintiff, it is axiomatic that transmitting a defamatory statement via e-mail cannot be said to rise to the level of "substantial acts in furtherance of the conspiracy" required to subject a nonresident co-conspirator to jurisdiction by the forum State because "technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant." *See Noble Security, Inc.*, 611 F. Supp. 2d at 539–40; *Consulting Engineers Corp. v Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009).

In cases such as this one, however, where the alleged contacts with the forum State involve electronic activity as a basis for the defendant's "entry" into the State, the Fourth Circuit has held that specific jurisdiction may only be exercised when the particular defendant (1) directs electronic activity into the State; (2) with the manifested intent of engaging in business or other interactions within the State; and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. *ALS Scan, Inc.*, 293 F.3d at 714. In the defamation context, a plaintiff must demonstrate that the Internet activity is "expressly targeted at or directed to the forum state." *Young*, 315 F.3d at 263 (citing *ALS Scan, Inc.*, 293 F.3d at 712). *See also ESAB Group, Inc.*, 126 F.3d at 625–26 (in a defamation case, the court must look at whether the defendant has expressly aimed or directed its conduct toward the forum state). In *Young,* the Fourth Circuit declined to exercise personal jurisdiction over a nonresident newspaper defendant in a defamation case brought by a Virginia resident because the newspaper's Internet activity was not "expressly targeted at or directed to the forum state." *Id*.

In this defamation case, Plaintiff does not allege in the Complaint that Defendant Peter's e-mail message was created in Virginia. Nor does Plaintiff allege in the Complaint that Peter's e-mail was "manifestly intended for," "expressly targeted at," or "directed to" a Virginia audience. *Id*. Once again, Plaintiff alleges in the Complaint that the e-mail was intended to

lessen his credibility in the <u>Canadian</u> lawsuit and damage his business interests and reputation <u>in Iraq</u>. *See* Complaint ¶¶ 49, 54.  Nor does the text of Peter's e-mail itself demonstrate that it was expressly targeted at, or manifestly intended for, Virginia consumption: it simply states "Please note the attached document received this office, 6 Feb 07."  Complaint, Ex. C.  Even if Plaintiff's allegation that Peter's e-mail was received by PSCAI members operating facilities within the Commonwealth of Virginia were taken as true, such receipt is more properly characterized as "random and fortuitous" rather than a "substantial act in furtherance of the conspiracy."  *See Burger King Corp.*, 471 U.S. at 475.  Therefore, this Court cannot exercise specific jurisdiction <u>over Col. Holly</u> because there were no "substantial acts in furtherance of the conspiracy" committed in Virginia.  Peter did not – and Col. Holly most certainly did not – expressly and intentionally target anyone or anything in Virginia during the course of this alleged conspiracy to defame Plaintiff.

Moreover, even if the receipt of an e-mail message in Virginia constitutes a substantial act in furtherance of the alleged conspiracy, there is no allegation in the Complaint that Col. Holly (who did not authorize, draft or send the electronic message) knew or should have known that the e-mail of his alleged co-conspirator (Peter) would be received in Virginia.  Plaintiff makes no such allegation in the Complaint, nor could he.  If the e-mail reached a Virginia recipient, then it was clearly fortuitous or random.  Accordingly, there is no basis for this Court's exercise of personal jurisdiction over Col. Holly based on the "conspiracy theory of personal jurisdiction."

Given the foregoing, it is evident that this Court has no statutory or constitutional basis to exercise personal jurisdiction over Col Holly.  As a result, Col. Holly must be dismissed from this action.

21

## IV.    PLAINTIFF'S CLAIM FOR CONSPIRACY (COUNT II) IS TIME-BARRED.

Plaintiff's common law conspiracy claim against Col. Holly, Count II to the Complaint, is time-barred and therefore should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted.  A federal court sitting in diversity must apply the law of the forum State when determining both the applicable statute of limitations and the time at which a claim accrues under the applicable statute.  *Ragan v. Merchants Transfer and Warehouse Co.*, 337 U.S. 530 (1949).

Under Virginia law, the statute of limitations for common law conspiracy is the same as the limitations period applicable to the underlying tort.  *Bay Point Condo. Ass'n v. RML Corp.*, 52 Va. Cir. 432, 449 (Norfolk 2000).  A cause of action for defamation in Virginia must be filed within one year of when a defamatory e-mail is sent.  Va. Code Ann. § 8.01-247.1 (2010); *Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 718 (W.D. Va. 2008).

The Complaint alleges that Peter sent a defamatory e-mail message on February 7, 2007.  Complaint ¶ 48.  Plaintiff did not move to amend the Complaint to add Col. Holly as a defendant until March 26, 2008, more than one year later.  Because Plaintiff's amendment adds, rather than substitutes, a new party, the amendment does <u>not</u> relate back to the initial filing date for statute of limitations purposes.  Fed. R. Civ. P. 15(c)(1)(C) (2010); *Onan v. Cnty. of Roanoke*, No. 94-1770, 1995 U.S. App. LEXIS 9085, *6 (4th Cir. April 21, 1995) (citing *Wilson v. United States Govt.*, 23 F.3d 559, 563 (1st Cir. 1994)).  Therefore, Count II of the Complaint against Col. Holly is barred by the statute of limitations and should be dismissed on that basis.

## V.   COUNT II OF THE COMPLAINT FAILS TO STATE A CLAIM FOR COMMON LAW CONSPIRACY BECAUSE THE ELEMENTS OF CONSPIRACY AND DEFAMATION ARE NOT SUFFICIENTLY PLED.

### A.   The Complaint Does Not Contain Facts Sufficient to Lead to a Reasonable Inference that Col. Holly Came to an Agreement to Harm the Plaintiff.

The common law conspiracy claims alleged against Col. Holly in the Complaint are implausible, and should be rejected under *Bell Atlantic Corp. v. Twombly* and its progeny.  *See* 550 U.S. 544 (2007).  In order to state a valid claim for civil conspiracy under Virginia common law,[16] Plaintiff must allege in the Complaint sufficient facts to plausibly demonstrate that Col. Holly and Defendant Peter came to "an agreement or understanding … to do an unlawful act, or to use unlawful means to do an act which is lawful." *Calderon v. Aurora Loan Serv.*, No. 1:10cv129, 2010 U.S. Dist. LEXIS 55602, *14 (E.D. Va., Alexandria Div. June 3, 2010) (citing *Hechler Chevrolet, Inc. v. General Motors Corp.*, 337 S.E.2d 744, 748, 230 Va. 396, 402 (1985)).  *See also Ashcroft v. Iqbal*, ___U.S. __, 129 S. Ct. 1937, 1949, 2009 U.S. Dist. LEXIS 3472 (2009) (citing *Twombly*, 550 U.S. at 556).  Specifically, the Complaint must contain facts that would "reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

When determining whether a claim has been plausibly alleged, the Court "must first identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth." *Iqbal*, 129 S. Ct. at 1951.  Next, "assuming the veracity of well-pleaded factual allegations, a court must conduct a context-specific analysis, drawing on its

---

[16]   This Court has previously recognized that there is a threshold question regarding whether Virginia law applies to Plaintiff's common law conspiracy claim where the underlying tort is "defamation by means of mass communication" such as has been alleged here. *See Galustian v. Peter*, Civ. Action No. 2:08cv59, 561 F. Supp. 2d 559, 565-66 (E.D. Va. June 18, 2008).  This section presumes that Virginia law applies.

judicial experience and common sense, and determine whether the factual allegations plausibly

suggest an entitlement to relief." *Id.* at 1950–51 (internal citations omitted).  The complaint must

plead sufficient facts to allow the court to infer "more than the mere possibility of misconduct."

*Id*.

A context-specific analysis demonstrates that Plaintiff's allegations against Col. Holly do

not plausibly suggest an entitlement to relief.  The Complaint does not allege a single definitive

fact that would permit this Court to infer even a "mere possibility of misconduct" as to Col.

Holly.  The majority of the Complaint focuses on a business dispute between Plaintiff, Walter

Arbib, and Michael Douglas, as well as other agents and officers of the SkyLink Group,

regarding Plaintiff's alleged ownership interest in Skylink Arabia.  *See* Complaint ¶¶ 9–43.  Col.

Holly's only involvement with this dispute, as alleged by Plaintiff, is that a SkyLink agent

delivered the warrant to Holly "because of his official U.S. Governmental role in Iraq" and

because, by virtue of this official position, Col. Holly was "the one man who … could most

easily adversely affect Plaintiff's work and reputation in Iraq."  *Id.* ¶ 43.  Although the warrant

was allegedly delivered to Col. Holly because of his official role in reconstructing war-torn Iraq,

it is completely implausible that Col. Holly then delivered the warrant to Peter in order to

prevent Plaintiff from negotiating a litigation settlement in Canada or in order to benefit

monetarily by obtaining a "secret interest" in SkyLink Arabia.  *Id.* ¶¶ 43-44.

According to Plaintiff's own verified allegations in the Complaint, Col. Holly was

Director of Logistics for the Project and Contracting Office of the U.S. Army Corps of

Engineers' Gulf Region Division.  *Id.* ¶ 4.  Col. Holly managed billions of dollars for the Iraq

reconstruction effort, and was "responsible for all activities associated with program, project,

asset, and financial management, and manage[d] both construction and non-construction across

six sectors."  *Id.*  Peter, as alleged by the Plaintiff in his Complaint, is Director of the Private

24

Security Company Association of Iraq, "an association representing the interest of more than 40 private security companies…." *Id.* ¶ 3. Therefore it is simply implausible that Col. Holly delivered the warrant (to Peter) for any reason other than within the course of his official duties and for official purposes.

Plaintiff has alleged nothing more than parallel conduct, which is not enough to state a claim for civil conspiracy in Virginia. As the Alexandria Division of this Court has recently recognized:

> [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a [conspiracy] claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Feeley v. Total Realty Mgmt.,* 660 F. Supp. 2d 700, 712-713 (E.D. Va. 2009) (citing *Twombly,* 550 U.S. at 556-57). Without more factual support or "context that raises a suggestion of a preceding agreement," the allegations in the Complaint simply do not plausibly suggest that Col. Holly and Peter entered into a tacit agreement or understanding to do an unlawful act, or to use unlawful means to do an act which is lawful. At best, their actions occurred in a sequence consistent with their official job duties. That's all. Plaintiff must do more than allege something "conceivable" or "speculative" – the claim must be "plausible on its face," and this Plaintiff has failed to do. *See Twombly*, 550 U.S. at 570.

Moreover, Col. Holly has denied all of these unsubstantiated allegations under oath. *See* Holly Aff. ¶¶ 7-10. In his Affidavit, which has already been made a part of the record in this case, Col. Holly states that the warrant "was a significant development affecting the interests of private security contractors in Iraq because it appeared to be an attempt by an Iraqi court to assert jurisdiction over a foreign contractor in contravention of Coalition Provisional Authority Order

Number 17." *Id.* ¶ 7.  Col. Holly delivered the warrant to Peter "to make him aware of the warrant because it potentially affected the operations of private security companies in Iraq." *Id.* ¶ 8.  Col. Holly had no authorization "to bestow, award, or grant contracts to private contracts" and "do[es] not now" nor has "ever had, any business or ownership interest in SkyLink Arabia or any private security company." *Id.* ¶¶ 9–10.  Therefore, disregarding Plaintiffs' conclusory and unsubstantiated allegations in the Complaint for the purposes of this Motion to Dismiss, as the Court must do under *Iqbal*, no plausible motive exists for the conspiracy alleged between Col. Holly and Peter.  *See Scharpenberg v. Carrington*, 686 F. Supp. 2d 655, 662 (E.D. Va. 2010) (the absence of any economic incentive suggests a lack of motive to injure the plaintiff; without additional factual allegations, a business conspiracy is implausible and insufficiently pled.).

**B.      Plaintiff Has Failed to State a Claim for Conspiracy Because the Underlying Wrong, Defamation, Has Not Been Sufficiently Alleged.**

The Complaint also fails to establish a cause of action for defamation under Virginia law. Actionable conspiracy under Virginia common law requires proof that the underlying tort was committed.  *Almy v. Grisham*, 273 Va. 68, 639 S.E.2d 182, 189 (2007).  This is so because "[t]he gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *Id.* at 190.  Thus, where "there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong." *Citizens for Fauquier County v. SPR Corp.*, 37 Va. Cir. 44, 50 n. 11 (Fauquier County 1995).

To state a claim for defamation under Virginia law, Plaintiff must show (1) publication (2) of an actionable statement with (3) the requisite intent.  *Echtenkamp v. Loudoun County Public Schs.*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003).  To be "actionable," the statement

must not only be false, but defamatory, that is, it must "tend [] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).

For the reasons set forth in Peter's Memorandum filed April 16, 2010 (ECF No. 62) ("Peter Memo.") (adopted by Col. Holly and incorporated by reference herein), the Complaint does not state a claim for defamation which passes muster under *Iqbal*.  Peter's e-mail message to the PSCAI membership stated the following "Please note the attached document received this office, 6 Feb. 07.  ISI (http://www.isiiraq.com) is NOT/NOT a member of the PSCAI." Complaint, Ex. F.  These statements are both true; therefore on its face, the e-mail is not defamatory.[17]  The fact that the warrant attached to the e-mail message was later discredited "does not convert the statement, true at the time of its publication in the resolution, into one that was false and defamatory."  *Union of Needletrades v. Jones*, 603 S.E.2d 920, 925-26, 268 Va. 512, 521-522 (2004).

Moreover, the communication between Peter, acting in his capacity as Director of PSCAI, and the membership of PSCAI, is entitled to a qualified privilege under Virginia law as a communication "between persons on a subject in which the persons have an interest or duty." *Needletrades*, 268 Va. at 519, 603 S.E.2d at 924.  The Complaint must allege facts that plausibly suggest that Peter acted with "personal spite, or ill-will, independent of the occasion on which the communication was made."  *Id.* at 520.  No other occasions are alleged in the Complaint, nor is any other factual support whatsoever which, after "drawing on judicial experience and

---

[17]      This Court recognized during oral argument that Peter did not describe the warrant as "true or untrue."  Peter merely "received the document" but did not comment on the veracity of its contents.  *See* **Exhibit C**, Transcript of Hearings on Motions before the Honorable Rebecca Beach Smith, 20:12-21:10, May 15, 2008.

common sense" would tend to suggest that the factual allegations pled plausibly suggest an entitlement to relief. *See Iqbal*, 129 S. Ct. at 1950-51.

Finally, in order to state a claim for defamation under Virginia law (and by implication, civil conspiracy to defame by Defendants Peter and Holly), Plaintiff must allege in the Complaint facts showing that Peter actually publicized the false statement. *Chapin v. Greve*, 787 F. Supp. 557, 562 (E.D. Va. 1992). The Complaint fails to allege which, if any, of the alleged recipients actually opened the e-mail and read its contents and/or the attachment. Again, Plaintiff fails in his Complaint to demonstrate how his defamation claim is plausible, as opposed to "conceivable" or "speculative." *See Twombly*, 550 U.S. at 570. Therefore, Plaintiff's common law conspiracy claim against Col. Holly in the Complaint should be dismissed for failing to state a claim for defamation upon which relief can be granted.

## VI.     COUNT III FOR STATUTORY CONSPIRACY CONTAINS NOTHING MORE THAN MERE CONCLUSORY ALLEGATIONS AND FAILS TO STATE A CLAIM.

The Complaint fails utterly to plead the necessary elements of a statutory claim for business conspiracy under the Virginia Conspiracy Act: (1) concerted action; (2) legal malice; and (3) causally-related injury. Va. Code Ann. §§ 18.2-499 & 500 (2010); *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 144 F. Supp. 2d 558, 2001 U.S. Dist. LEXIS 7006 (W.D. Va. 2001), *aff'd sub nom. Va. Vermiculite Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277 (4th Cir. 2002). Plaintiff "must support [his] business conspiracy claim with more than conclusory allegations" because "[a]llegations of business conspiracy, like fraud, must be pleaded with particularity." *Mansfield v. Anesthesia Assocs.*, No. l:07cv941, 2008 U.S. Dist. LEXIS 34732 at *12 (E.D. Va. Apr. 28, 2008); *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004). "[T]o survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose in more than mere conclusory language." *Bay Tobacco,*

*LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (citing

*Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985)).  "Simple conclusory

statements contained in a complaint are not sufficient to sustain a cause of action no matter how

vicious the alleged conspiracy."  *See Connor v. Real Title Corp.*, 165 F.2d 291, 294 (4th Cir.

1947).  For the following reasons, Plaintiff has not pled his claim for statutory conspiracy with

the requisite particularity.

First, the Complaint does not allege a cognizable injury under the statute.  Any interest

which Plaintiff may have in shares of SkyLink Arabia is not cognizable under Virginia Code §

18.2-500 because stock ownership in his company is considered an employment interest, or

"personal" asset, rather than a business interest.  *See* Peter Memo. 17–18; Memorandum Opinion

Order 3 n. 2, June 18, 2008, ECF No. 27.  Moreover, to the extent Plaintiff seeks to recover

damage which ISI International Limited has suffered via his capacity as "principal business

owner," Plaintiff cannot recover for ISI's injury under Virginia Code § 18.2-500.  *See* Peter

Memo. 18–19.  ISI is not a plaintiff in this action.

Second, Plaintiff has failed to sufficiently allege in the Complaint the level of malice

required to state a claim under Virginia Code § 18.2-500.  An act is "willful and malicious"

under the statute if "undertaken to injure the plaintiff intentionally, purposefully, and without

legal justification."  *Simmons v. Miller*, 261 Va. 561, 544 (2001).  The Complaint does not allege

a single fact that plausibly suggests that Col. Holly intentionally or purposefully undertook to

injure Plaintiff "without legal justification."  The *only* act alleged in furtherance of the

conspiracy is a single e-mail message to trade association constituents by Peter – and no acts by

Col. Holly.  As explained in Peter's Memorandum, the e-mail constitutes a privileged

communication because it was made in good faith, on a subject in which the person

communicating had an interest, owed a duty, and was made to a person who had a corresponding

29

interest or duty.  *See* Peter Memo. 20 (citing *Merlo v. United Way of Am.*, 43 F.3d 96, 104 (4th Cir. 1994)).  The rest of Plaintiff's contextual allegations regarding Defendants' purported economic incentives are qualified as "upon information and belief."  Accordingly, it is simply not plausible, based on these unsubstantiated allegations of the Complaint, to conclude that Col. Holly or Peter agreed to intentionally and purposefully injure Plaintiff.

Third, Plaintiff does not make in the Complaint *any* factual allegations tending to show a causal connection between Peter's e-mail message and resulting injury to Plaintiff's business in Iraq.  The Complaint does not allege any facts regarding any recipients who opened the e-mail or read its attachment.  The Complaint further fails to allege any specific factual support stating that an agent of any of those entities, upon reading the e-mail, decided not to direct business to Plaintiff as a result of the contents of the e-mail or its attachment.  Plaintiff essentially asks in his Complaint for the Court to presume that the contents of the e-mail were read and had a detrimental effect on his business interests in Iraq.  This set of facts, without more specifics, is speculative at best.  *See Skillstorm, Inc. v. Elec. Data Sys*., *LLC*, 666 F. Supp. 2d 610, 618-620 (E.D. Va. 2009) (Plaintiff's claim was dismissed because he had alleged no facts that would move the claim from "possible to plausible.").  Accordingly, Plaintiff has failed to state a claim in his Complaint for which relief can be granted and the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Col. John J. Holly respectfully requests that this Court dismiss the Complaint against him for invalid service and/or lack of personal jurisdiction.  In the alternative, Col. John J. Holly respectfully requests that the Court dismiss the case for failure to state a claim against Col. Holly for which relief can be granted, or stay the case pending a receipt of certification from the Attorney General substituting the United States as party defendant.

Respectfully submitted,


_____/s/_____
Matthew B. Kirsner
Virginia Bar No. 41615
Jennifer E. Lattimore
Virginia Bar No.71188
Attorneys for Defendant Col. John J. Holly
Eckert Seamans Cherin & Mellott, LLC
707 East Main Street
Suite 1450
Richmond, VA 23219
Phone: (804) 788-7744
Fax: (804) 698-2950
mkirsner@eckertseamans.com
jlattimore@eckertseamans.com

*Counsel for Defendant Col. John J. Holly*

Dated:  August 30, 2010


## CERTIFICATE OF SERVICE


I HEREBY CERTIFY that on the 30th day of August 2010, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

Frank Alwin Edgar , Jr.
Kaufman & Canoles PC
11817 Canon Boulevard
Suite 408
Newport News, VA 23606
Email: faedgarjr@kaufcan.com

Marc Ericson Darnell
Kaufman & Canoles PC (Newport News)
11817 Canon Boulevard
Suite 408
Newport News, VA 23606
Email: medarnell@kaufcan.com

*Counsel for Plaintiff*

Robert W. Johnson , II
Balch & Bingham LLP (DC)
801 Pennsylvania Ave NW, Suite 325
Washington, DC 20004-2615
Email: rjohnson@balch.com

Christopher Scott Anulewicz
Kenneth Alexander Khoury
Balch & Bingham LLP (GA-NA)
30 Ivan Allen Jr. Blvd NW, Suite 700
Atlanta, GA 30308
Email: canulewicz@balch.com
Email: akhoury@balch.com

*Counsel for Defendant Lawrence T. Peter*

                /s/
Matthew B. Kirsner
Virginia Bar No. 41615
Jennifer E. Lattimore
Virginia Bar No. 71188
Attorneys for Defendant Col. John J. Holly
Eckert Seamans Cherin & Mellott, LLC
707 East Main Street
Suite 1450
Richmond, VA 23219
Phone: (804) 788-7744
Fax: (804) 698-2950
mkirsner@eckertseamans.com
jlattimore@eckertseamans.com

Dated:  August 30, 2010